**UNITED STATES ex rel. DE GRAW v. TOON, Commanding Officer, U. S. Army Camp.**

**No. 21.**

Circuit Court of Appeals, Second Circuit.

Nov. 7, 1945.

Vine H. Smith, Asst. U. S. Atty., of Brooklyn, N. Y. (T. Vincent Quinn, U. S. Atty., and Anthony G. Greco, Asst. U. S. Atty., both of Brooklyn, N. Y., on the brief), for respondent-appellant.

Frederick G. Watson, of New York City, for relator-appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This habeas corpus proceeding tests the legality of the summary reinduction into service of an honorably discharged soldier. Relator had come into collision with his Local Board over deferment before his service in the Army: In his questionnaire, filed in 1941, he claimed that his father and mother and a nephew and niece, both minors, were dependent upon him; but at that time he was given an occupation deferment upon request of his employer, Wright Aeronautical Corporation. He was married in the spring of 1942, and shortly thereafter the Board asked Wright if it could obtain replacement for him in three months. Wright, however, still claimed deferment for relator; but after further proceedings the Board classified relator as 1-A, the employer appealed, and the Board of Appeal reversed for a grant of occupational deferment. The Local Board made a strong protest against this decision, Wright eventually revoked its request for deferment, and relator was finally classified 1-A and duly inducted into the Army on December 15, 1942. He served until June 1, 1943, when, after an investigation by the Army and the Red Cross, he was honorably discharged pursuant to army regulations which authorize such discharge where clearly necessary to prevent and relieve destitution of members of the soldier's family arising after induction. Sec. V, AR 615-360(9). As directed by the Army authorities, he reported his discharge and the reasons therefor to the Local Board, which, on June 11, again classified him as 1-A; and after his appeal failed, he was reinducted on July 19, 1943, whereupon this writ of habeas corpus issued on petition of his wife. The District Court ruled that he was entitled to, and had not been accorded, a hearing before reinduction, 52 F.Supp. 170, and sustained the writ, ordering his discharge from further detention or restraint in the United States Army and remanding him to the jurisdiction of the Local Board for reclassification "upon all the facts after granting him a full hearing." The respondent appeals through the United States Attorney.

When a selectee is inducted into the Army under the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 301 et seq., his Local Board is required by the Selective Service Regulations to classify him as 1-C; and thereafter, if he is separated from the land or naval forces, the Board must reopen his classification and classify him anew. 32 CFR, Cum.Supp., §§ 622.15, 633.14. When the Board reopens a classification it must consider the new evidence which it has received and again classify the registrant in the same manner as if he had never before been classified. Id., § 626.111. There is no question, therefore, but that the Local Board was required to reconsider relator's case and to determine his classification anew in the light of all the information before it. Relator questions whether the Local Board can act in effect to reverse the Army's discharge without a showing of a change of circumstances; but that interesting point need not be decided here, and may have to await another great national need for conscription for its resolution. Indeed the entire case takes on a faintly academic tinge through the two years' delay of the appeal by consent of the parties—relator being at large on his own recognizance—until all our enemies have surrendered. We are clear that relator was not accorded his rights given him by the regulations and due him at law, and that consequently his induction cannot stand.

The United States Attorney argues that no formal hearing need be given a registrant before reclassification, and that his rights are safeguarded if he has an opportunity to present evidence before his case is finally determined. We need not stick in the bark at the word "hearing"; we have recognized that board procedures must be informal and cannot be conducted as legal trials. Cf. United States ex rel. Trainin v. Cain, 2 Cir., 144 F.2d 944, and cases cited, certiorari denied, 323 U.S. 795, 65 S.Ct. 439. Nevertheless, the essence of a fair determination of a registrant's case must be preserved, which means that he must have the opportunity to know and confront the evidence against him. United States ex rel. Levy v. Cain, 2 Cir., 149 F.2d 338. In this case we might perhaps overlook the facts that both the Local Board and the Appeal Board decided the case in the first instance without the further evidence submitted by relator and his wife, since the papers were later resubmitted and reconsidered by the Appeal Board, though such initial decision in advance of the evidence hardly accords with the spirit of the regulations. But we think that in at least two regards the procedure definitely violated the regulations.

Perhaps the more serious defect is the failure to acquaint relator with the damaging evidence against him considered

by the Board and submitted to the Appeal Board before the latter's final action. This was a letter from two "Advisory Board Members," dated June 28, 1943, or after the first decisions by both boards and the second or affirming decision by the Local Board, reporting on a personal investigation conducted by them as to relator's claims of dependency and holding them to be quite unfounded. The regulations are strict and explicit first that all information considered by a board shall be in writing or reduced to writing and that "under no circumstances should the local board rely upon information received by a member personally unless such information is reduced to writing and placed in the registrant's file," 32 CFR, Cum.Supp., § 623.2, cf. also §§ 625.2(b), 627.13; and second that the registrant may appear before the Local Board on request, "may discuss his classification, may point out the class or classes in which he thinks he should have been placed, and *may direct attention to any information in his file* which he believes the local board has overlooked or to which he believes it has not given sufficient weight." Id., § 625.2(b) (italics supplied). The last quoted regulation goes on to provide that the registrant may also present "such further information as he believes will assist the local board in determining his proper classification." Opportunity to know and rebut damaging evidence goes to the heart of the controversy, and lack of opportunity vitiates the whole proceeding. United States ex rel. Levy v. Cain, supra, 149 F.2d 338, 342. The Board cannot rely on any claim of failure of relator to make written request for appearance—even had that been still open after relator had personally appeared and been heard on June 18—because this report was made some ten days later, at a time when relator had no reason to suppose that further evidence was being introduced against him.[1]

The other defect is the failure of the Local Board properly to report the facts and circumstances of relator's discharge to the Appeal Board. His discharge papers showed that he was discharged "under provisions of Sec. V, AR 615–360," as he notified the Board; and a letter sent from the Personnel Adjutant of the Camp where relator had been stationed, dated June 1, 1943, advised the New York State Director that relator was discharged "to accept employment in an essential industry." The Board's notes do not show that the discharge was pursuant to a specific army regulation; and the letter of June 1, 1943, does not appear among the appeal papers. The importance of this is that relator had gone back to his job at Wright's on June 3, and that fact was cited against him in the letter of the Advisory Board on June 28. The regulations require transmission of the registrant's complete file on appeal; and "if any facts considered by the local board" do not appear in the written information in the file, the Board must prepare a written summary, being "careful to avoid the expression of any opinion" as to the information and required to "refrain from including any argument in support of its decision." 32 CFR, Cum.Supp., § 627.13. The appeal file was therefore incomplete in important particulars.

■ Hence the District Court was correct in discharging relator from restraint by the United States Army. It was also right in substantial effect in remanding relator to the Local Board for further action; for "no classification is permanent" (32 CFR, Cum.Supp., § 626.1), and the Local Board always has authority to take further action so long as the Act remains in effect. But there is perhaps less reason now than before the close of actual warfare for us to attempt to direct the Board how it should proceed further than that it must do so according to law as judicially defined. The order should therefore follow the form employed in United States ex rel. Levy v. Cain, supra, and should provide that relator be released from custody without prejudice to further proceedings of the Local Board in conformity with the foregoing opinion.

As thus modified, the order is affirmed.

---

[1] An earlier letter dated May 13, 1943, of one of these Advisory Board members, making similarly damaging statements, presumably was in the file on June 18, though relator asserts he was not permitted to see his file until July 16, 1943, a week after he had been ordered to report for induction.